794 A.2d 270

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. ARBIN HOOKS, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted March 4, 2002—Decided April 11, 2002.

Before Judges KESTIN, STEINBERG, and ALLEY.

*Peter A. Garcia,* Acting Public Defender, attorney for appellant (*J. Michael Blake,* Assistant Deputy Public Defender, of counsel and on the brief).

Appellant filed a pro se supplemental brief.

*Peter C. Harvey,* Acting Attorney General (*Gerard C. Sims, Jr.,* Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

Alley, J.A.D.

Defendant was charged in eighteen Essex County indictments in November 1991, arising from a series of offenses against nine Irvington and Newark women. In the indictments, several, and in some instances all of the following offenses were charged: first-degree robbery, *N.J.S.A.* 2C:15–1; first-degree kidnapping, *N.J.S.A.* 2C:13–1(b)(1); second-degree aggravated sexual assault, *N.J.S.A.* 2C:14–2(a); second-degree attempted aggravated sexual assault, *N.J.S.A.* 2C:14–2(a); third-degree terroristic threats, *N.J.S.A.* 2C:12–3; third-degree aggravated sexual contact, *N.J.S.A.* 2C:14–3(a); second-degree aggravated assault, *N.J.S.A.* 2C:12–1(b); fourth-degree unlawful possession of a weapon, *N.J.S.A.* 2C:39–5(d); third-degree possession of a weapon for an unlawful purpose, *N.J.S.A.* 2C:34–4(d); and third-degree endangering the welfare of a child, *N.J.S.A.* 2C:24–49(a). Nine of the eighteen indictments charged defendant solely with fourth-degree possession of a weapon by a convicted felon, *N.J.S.A.* 2C:39–7.

On the State's motion, a Law Division judge ordered all the indictments to be tried together. Indictment No. 4740, relating to

an assault on one S.J. was dismissed by the State prior to trial,[1] and sixteen indictments remained.[2]

A jury trial was conducted from October 28 to November 6, 1992. After the State rested its case, the trial court dismissed the following charges: the terroristic threats count, Indictment No. 4741; robbery, Indictment No. 4744; and endangering the welfare of a child, Indictment No. 4747.[3] In its initial deliberations, the jury was not asked to consider the various charges of possession of a weapon by a convicted felon, *N.J.S.A.* 2C:39-7. It convicted defendant of the charges on all counts that had been submitted to it, except unlawful possession of a weapon under Indictment No. 4744.[4] On each of these eight indictments, defendant was found guilty of at least one crime.

Upon the return of these verdicts, the jury was then instructed to deliberate on the remaining eight charges, namely, possession of a weapon by a convicted felon, *N.J.S.A.* 2C:39-7. The jury found defendant guilty on each of these charges.

Defendant was sentenced on July 7, 1993. Pursuant to the State's application, the court imposed an extended term. The aggregate sentence imposed on defendant was life in prison plus thirty years and a forty-year parole disqualifier. Because many of

---

[1] We assume as a result that one of the nine charges of possession of a weapon by a convicted felon was also dismissed as it related to the S.J. case, specifically, Indictment No. 4749, although this is not made clear in the brief or record.

[2] The State's brief is apparently correct when it states that defendant was originally charged under eighteen indictments. There are only seventeen original indictments in the record. Although the appendix fails to include Indictment No. 4742, defendant was convicted under that indictment according to the judgment of conviction.

[3] Although the court stated it was dismissing count three of Indictment No. 4747, it actually dismissed count six.

[4] Although the judgment of conviction on Indictment No. 4744 indicates the jury acquitted Defendant of making terroristic threats, it actually acquitted him of unlawful possession of a weapon.

the sentences were imposed to run concurrently, we indicate only the base sentences. On Indictment No. 4744, first-degree kidnapping, the court imposed a life sentence with twenty-five years of parole ineligibility. On Indictment No. 4741, first-degree kidnapping, the court imposed a thirty-year sentence with a fifteen-year parole disqualifier, to run consecutive to the sentence imposed on Indictment No. 4744. All other sentences imposed were to run concurrent to those sentences.

Defendant filed his notice of appeal on August 23, 1993. No brief was filed, and the appeal was dismissed on January 22, 1996. On May 19, 2000, the appeal was reinstated and thus the matter is now before us on direct appeal.

I

According to evidence introduced by the State, there were eight victims, the first attack occurred on July 8, 1990, and the last on January 2, 1991. The jury later indeed determined that defendant was responsible for kidnapping, attempted/aggravated sexual assault/contact, assault, and/or robbery with respect to eight women. Each attack bore similarity to the others, and most occurred late at night in the same area of Irvington, New Jersey. Several victims were initially approached under the guise that defendant was looking for someone or some place. We summarize the alleged attacks in the order in which they occurred.

### Victim One–Indictment No. 4746

On July 8, 1990, G.P. was attacked and robbed while she was walking down the street near her apartment in Irvington. Her attacker then dragged her half a block to a nearby park, poking something G.P. assumed to be a gun into her back. Taking her to a secluded and unlit area of the park, the man forced her to take her clothes off while he exposed his penis. He sought fellatio, which G.P. refused to perform. Angrily, he turned her around and raped her from behind. When he let her go, G.P. saw the man holding a screwdriver.

On January 21, 1991, G.P. was shown a photograph array and picked out the picture of defendant as her attacker. Tests conducted on G.P. the night of her attack confirmed there was sperm in her vagina. When that was tested, it was revealed that the sperm came from a type O blood secreter. Tests of defendant revealed that he was a type O blood secreter, which is a relatively common biological characteristic. The results meant, however, that defendant could not be excluded as the perpetrator.

### Victim Two–Indictment No. 4747

The next known attack occurred on July 15, 1990, in Irvington. A.W.B. was grabbed outside the door of her home, to which she was returning with her three-year-old daughter. A hard object was pressed to her neck and she was forced to go to the backyard of the home. Her attacker began to fondle her and A.W.B.'s daughter screamed. At this point, a struggle ensued and A.W.B. was stabbed in the face and neck with a screwdriver. The man grabbed her pocketbook and ran away. A.W.B. sought treatment for her stab wounds. On January 14, 1991, she identified defendant as her attacker from a photo array.

### Victim Three–Indictment No. 4745

On September 15, 1990, S.T. was attacked as she attempted to go into her house in Irvington. The attacker threatened her and told her he wanted sex. He dragged her inside the home and put a knife to her throat. He forced her to disrobe then took her to another house a block away. He forced her to the basement where he raped her from behind after first unsuccessfully attempting to receive fellatio. Before he let her go, he stole $750 from her.

On September 20, 1990, S.T. was shown a photo array in black and white. On October 2, 1990, she was shown a photo array in color. She picked out defendant's picture in both. Tests of S.T. taken after her attack revealed the presence of semen on her vagina, but a blood group was unable to be determined. The semen was found to be a type H substance, consistent with type O

blood. Because this was consistent with the biological make-up of defendant, he could not be excluded as a suspect.

### Victim Four–Indictment No. 4748

The next attack occurred on November 20, 1990, in Newark. B.K. was attacked from behind while walking down the street. The man demanded money and held a knife to her neck. He forced her down the street to the back of a building. He successfully sought fellatio then raped her. B.K. later picked defendant out of a physical line-up in March 6, 1991. Tests revealed that the seminal material found in B.K.'s vagina was a type H substance, consistent with type O blood. An enzyme test was also performed and found to be 2–1. Defendant was later found to have a 2–1 enzyme level. He thus could not be excluded as a suspect.

This was not the final contact B.K. would have with defendant. After his arrest, defendant called B.K. collect using the name Maleek and asked her to come and visit him. Suspicious, B.K. called Investigator Tracey Morgan–Melamed before going to visit him. B.K. visited defendant twice, and each time she was "bugged" to record their conversation. Defendant lied to B.K. about the seriousness of the charges against him, claiming he was accused of robbing and attacking two, not eight, people. In these conversations he sought her trust and support.

### Victim Five–Indictment No. 4743

Prior to Defendant's arrest, he attacked S.H. on December 4, 1990. While walking down an Irvington street, a man demanded money and hit S.H. with a screwdriver. He then dragged her beside a nearby house, but as he continued attacking her with the screwdriver someone looked out the window of the house and yelled. As a result, the attacker ran away after trying to steal S.H.'s coat. The next day, S.H. was shown a photo array and identified a man named Clarence Davis as someone who looked like her attacker. On December 20, 1990, she picked defendant's photo out of a line-up.

**Victim Six–Indictment No. 4741**

On December 16, 1990, H.W. was attacked on the street in Irvington. The man held a knife to her neck and demanded money, but she was not carrying any. He pulled her to the backyard of a house and sought sex. H.W. told him she had just given birth and could not have sex due to her stitches. He said he would settle for fellatio. She fought against this, and he punched her in the face while trying to remove her pants. Thereafter, he hit her in the head with a flower pot. She also observed that he had an ice pick and a butter knife. Somehow, she was able to escape. The next day she selected defendant's photo from an array.

*Victim Seven–Indictment No. 4742*

On December 16, 1990, several hours after H.W.'s attack, L.W. was confronted by a man in her driveway while returning home to Irvington. This is the same building where victim two, W.B., lived. The man told her not to scream, but she screamed anyway, and he hit her with something that made her head bleed. The man then ran away. L.W. later identified defendant as her attacker from a photo array of six different men.

*Victim Eight–Indictment No. 4744*

On January 2, 1991, M.B. was walking on a street in Newark when she was grabbed from behind. The man threatened her with a gun, took her to the back of a house, and told her to disrobe. He demanded that she perform fellatio, but she refused, and he hit her. Scared, she complied. Her attacker then raped her from behind. There are no test results from this attack. On January 9, 1991, M.B. was shown a book with approximately 100 photos. She identified defendant's picture as the man who attacked her.

As noted, defendant was tried on charges arising from these attacks in a consolidated trial. There was also a ninth victim, S.J., but evidence was inconclusive that defendant was the culprit, as an unidentified seminal stain on S.J.'s underwear was inconsistent

with defendant's biological make-up. Although another such stain was consistent with defendant's blood type, the State chose to dismiss this charge. The State sought to exclude any testimony of or reference to S.J. The court agreed that such evidence was irrelevant to the case at hand and would only confuse the jury, and it precluded the defense from presenting evidence regarding S.J.

During the trial, victim four, B.K., testified about her interaction with defendant (Maleek) at the jail. Transcripts from those conversations were not introduced into evidence. The prosecutor described defendant's post-rape contact with B.K. as witness tampering during his summation.

At the conclusion of the evidence, the judge instructed the jury on the numerous offenses involved. The court did not charge second-degree kidnapping as a lesser included offense of first-degree kidnapping. Defense counsel objected, but was unsuccessful. During the charge, the judge offered two definitions of attempt, but not with regard to the crime of robbery.

The jury convicted defendant on every charge, with the exception of unlawful possession of a weapon as it related to the attack of M.B. The jury was then given a further charge, which instructed it to incorporate many of the principles from the initial charge in order for it to address the eight remaining possession of a weapon by certain persons. The jury began its deliberation on this phase of the case on November 6, 1992 at 12:50 p.m. Five minutes later, on this phase of the trial, the jury returned a guilty verdict on all counts.

## II

On appeal, defendant contends through counsel:

I. THE DEFENDANT'S FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO PRESENT A DEFENSE AND TO A FAIR TRIAL WERE VIOLATED BY THE EXCLUSION OF RELEVANT EVIDENCE INCLUDING EVIDENCE OF THIRD PARTY GUILT.

II. PLAIN ERROR REQUIRING REVERSAL OCCURRED BECAUSE THE DEFENDANT WAS DENIED A FAIR TRIAL BY THE JOINDER OF SEVENTEEN INDICTMENTS INTO ONE TRIAL (Not Raised Below).

III. DEFENDANT'S ROBBERY CONVICTIONS MUST BE REVERSED BE-
CAUSE OF THE COURT'S FAILURE TO DEFINE ATTEMPT IN ITS
INSTRUCTIONS ON ROBBERY AND DUE TO THE ERRONEOUS
INSTRUCTION ON ROBBERY GIVEN IN RESPONSE TO A QUES-
TION ASKED BY THE JURY DURING ITS DELIBERATIONS. (Not
Raised Below).

IV. THE ADMISSION OF TESTIMONY CONCERNING OTHER CRIMES
AND BAD ACTS WITHOUT ADEQUATE LIMITING INSTRUCTIONS
AND PROSECUTORIAL MISCONDUCT DURING SUMMATION DE-
PRIVED DEFENDANT OF HIS RIGHT TO DUE PROCESS AND TO A
FAIR TRIAL (Partially Raised Below).

V. DEFENDANT'S KIDNAPPING CONVICTIONS MUST BE REVERSED
BECAUSE THE TRIAL COURT DID NOT PROPERLY ADVISE THE
JURY CONCERNING ONE OF THE ELEMENTS OF FIRST DEGREE
KIDNAPPING AND OF THE LESSER INCLUDED OFFENSE OF SEC-
OND DEGREE KIDNAPPING.

VI. DEFENDANT'S CONVICTIONS FOR POSSESSION OF A WEAPON BY
A CONVICTED FELON MUST BE REVERSED BECAUSE THE TRIAL
COURT'S FAILURE TO PROPERLY INSTRUCT THE JURY DIRECT-
ED A GUILTY VERDICT ON THOSE COUNTS. (Not Raised Below).

VII. ALL OF THE VERDICTS OF GUILT OF KIDNAPPING WERE
AGAINST THE WEIGHT OF THE EVIDENCE.

VIII. THE SENTENCING COURT ERRED IN IMPOSING A 25 YEAR
PERIOD OF PAROLE INELIGIBILITY.

Defendant also asserts in his *pro se* supplemental brief.

THE PROSECUTOR'S USE OF FALSE AND PERJURED TESTIMONY DUR-
ING THE TRIAL AND GRAND JURY PROCESS, DENIED DEFENDANT
HIS RIGHTS TO DUE PROCESS OF LAW AND A FAIR TRIAL. *U.S.
CONST.* AMEND. VI, XIV; *N.J. CONST.* (1947). ART. 1, PARS. 9 AND 10.
(Not Raised Below).

We have carefully considered each of the foregoing contentions
in light of the record and applicable law, and conclude that none of
those contentions, with the exception mentioned below, is of
sufficient merit to warrant discussion in a written opinion. Ac-
cordingly, we affirm pursuant to *R.* 2:11–3(e)(2).

### III

■ The exception bears on the following point: whether the
court directed a verdict in its instructions regarding possession of
a weapon by a convicted felon following the jury's conviction of
defendant for the underlying felonies.

No defendant has the right to a jury charge to be given in his own words, "but when a conviction of unlawful possession is then followed, using the same jury, by a trial for possession by a convicted felon," careful limiting instructions are necessary to prevent the second charge from becoming a charade. *State v. Ragland,* 105 *N.J.* 189, 194, 519 *A.*2d 1361 (1986).

For instance,

If defendant is convicted of unlawful possession of the weapon, the trial of the latter charge (possession by a convicted felon), unless most carefully handled, can amount to a prohibited directed verdict in a criminal case. This, because the jury has already found by its initial conviction that the defendant possessed a weapon. If the same jury is told, in the immediately following trial of the charge of possession by a convicted felon, that it need not concern itself with the question of possession since it has already that fact by its prior conviction, the defendant is, in effect, deprived of that trial by jury to which he is entitled, namely, one in which the jury must find that the State has proved each and every material element of the crime beyond a reasonable doubt. Absent careful instructions, the jury will have been told, in effect, that it need *not* find possession beyond a reasonable doubt because it has already found it in the prior trial.

[*Id.* at 193–94, 519 A.2d 1361 (citations omitted).]

Here, defendant argues that the court directed a verdict because it failed to instruct the jury to disregard its previous verdict and start anew. The State counters that while the court may not have used those exact words, the essence of the second charge conveyed that concept.

In her instructions with respect to the charges under *N.J.S.A.* 2C:39–7, the judge stated: "All of my previous charges to you that had to do with the general laws of presumption of innocence, burden of proof, you as judges of the fact, the criteria that you will want to apply in considering credibility, all that is repeated here, as if I were to read it to you anew." She also offered to reread any previous instructions if the jury desired. She cautioned: "Now, the law applicable to these indictments is applicable to each one of them, and you must consider each one of them separately." She then instructed on the law of possession of a weapon by a felon and informed: "The three elements that the State must prove beyond a reasonable doubt are: First, the prior conviction of the crimes stated, robbery and or aggravated sexual assault;

second, the prohibited weapon; and third, the knowing possession." She concluded, "[i]f the State has failed to prove any element beyond a reasonable doubt, you must find the defendant not guilty."

This charge differs in some respects from the one given in *Ragland* that was found to be deficient. There, the court told the jury that if it found defendant guilty of possession, as it had just indicated that he was, then it must find him guilty of the felon in possession charge. *Ragland*, supra, 105 *N.J.* at 192, 519 *A.*2d 1361. This instruction prompted the Supreme Court to compose a bright-line rule. It concluded:

> What is needed in such a matter is a strong instruction to the jury to disregard its prior verdict of possession (for nothing short of that will suffice . . .), advising the jury that it is the State's burden to prove that fact beyond a reasonable doubt, allowing the jury, however, to consider the evidence that had previously been brought before it on the possession charge. . . . [Where] the judge affirmatively remind[s] the jury that it already found that the defendant possessed the weapon[,] . . . [s]uch a charge is manifestly improper, and no amount of reminder to the jury that it remains the State's burden to prove each element beyond a reasonable doubt will cure it.
>
> [*Id.* at 195–96, 519 A.2d 1361.]

The *Ragland* Court found it incurable error that the trial court reminded the jury that it already found the defendant guilty of possession. In the present case, the court did not make this same mistake. This is persuasive in the State's efforts to salvage the convictions, but we conclude that it is not sufficiently so in the final analysis. The court did not tell the jury to disregard its prior verdict, and it also did not tell the jury that it had already found the defendant guilty of possession. Instead, the court indicated to the jury that it should consider the previous set of instructions "as if I were to read it to you anew." The court warned the jury to consider each charge separately and that it must first deem the defendant to have had possession before the State can meet its burden of proof beyond a reasonable doubt. The trial court also instructed the jury: "If the State has failed to prove any element beyond a reasonable doubt, you must find the defendant not guilty." Unlike the facts in *Ragland*, then, the trial

court here did not remind the jury that it had just found the defendant guilty of possession and, instead, told it that it had to find possession before it could convict.

But a jury that has just convicted a defendant of weapons possessory offenses and is to consider charges under *N.J.S.A.* 2C:39–7 case must do so in conformity of the requirements of *Ragland.* Indeed, the Model Criminal Jury Charge for this crime contains the following language to communicate to the jury its responsibilities in that situation:

> You must disregard completely your prior verdict, and consider anew the evidence previously admitted on the possession of a weapon. The defendant is entitled to the presumption of innocence. Each and every material fact that makes up the crime, including obviously the element of possession, must be proven by the State beyond a reasonable doubt.[5]

It is plain here, that the trial court's instruction failed in critical respects to conform to the standards imposed by *Ragland.* It did not emphasize to the jurors that it was their duty to disregard completely their prior verdict, which included elements such as possession that the jury would have to determine independently in the *N.J.S.A.* 2C:39–7 phase of the case. It did not even mention that duty. It did not tell them to consider anew the evidence previously admitted on the issue of possession of the weapon. Nor did it reiterate the presumption of innocence except in the most cursory manner, when it referred to the instructions previously given concerning the kidnapping and other charges.

Thus, the strict compliance with the *Ragland* rule that was in order was not provided, and as a result we "need not determine whether this error was harmless beyond a reasonable doubt, for when the constitutional deprivation consists of a direct-

---

[5] This paragraph is part of the current Model Charge, which was revised effective June 21, 1999. The 1990 Model Charge, which appears to have been in use at the time of defendant's 1992 trial, did not include this paragraph. The 1990 charge did, however, specifically make reference to *Ragland* by way of footnote, and in any event the essence of this paragraph was readily derivable from the requirements of *Ragland* that were emphatically laid down by the Chief Justice's opinion therein.

ed verdict, preservation of the integrity of the right to trial by jury requires reversal." *Ragland, supra,* 105 *N.J.* at 196, 519 *A.2d* 1361.[6]

We reverse each of the convictions on the charges of possession of a weapon by a convicted felon, *N.J.S.A.* 2C:39 7, and remand for a new trial thereon because the instructions by the trial court in effect directed a verdict for the State. We affirm in all other respects.

---

[6] We note briefly that defendant contends that the prosecutor's summation should be looked at in tandem with the court's charge. In his summation, the prosecutor reminded the jury that it had "already made a finding [Defendant] possessed a weapon." He concluded: "When you go into that room, I submit to you, you can take sixty seconds to pass that sheet around, but that's all it should take you to determine that he is a convicted felon and he's got weapons again." These comments were wrong and were extremely prejudicial. Because the court's charge on this issue was defective and violated the *Ragland* strictures, we need not consider whether the unfairness created by the prosecutor's summation was ground alone for a reversal. We would anticipate, however, with more than a decade and one-half of experience under *Ragland,* that in other cases, prosecutors will have sufficient regard for the presumption of innocence to avoid repetition of the highly inappropriate prosecutorial comments of which this defendant has complained.