**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1650-21

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ROBERT W. SMITH, a/k/a
MOOK SMITH, and KEVIN
WILLIAMS,

     Defendant-Appellant.

_____

Submitted February 5, 2024 – Decided May 7, 2024

Before Judges Gilson and Berdote Byrne.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Indictment Nos. 18-06-0380 and 18-06-0381.

Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Monique D. Moyse, Designated Counsel, on the brief).

John P. McDonald, Somerset County Prosecutor, attorney for respondent (Gerard J. Tyrrell, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

On the evening of May 4, 2018, C.V.N. (Cathy) and R.P. (Randy) were driving in Cathy's Mazda.[1]  A black Nissan SUV driven by defendant Robert Smith pulled alongside the Mazda, and Smith fired three shots at the Mazda. Both vehicles then crashed.  Fortunately, Cathy and Randy were not hit by the bullets and sustained only relatively minor injuries, although Randy later testified he suffered a head injury.

A jury convicted defendant of two counts of first-degree attempted murder, N.J.S.A. 2C:5-1(a)(1) and N.J.S.A. 2C:11-3(a)(1); second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b)(1); fourth-degree possession of a defaced handgun, N.J.S.A. 2C:39-3(d); fourth-degree possession of hollow nose bullets, N.J.S.A. 2C:39-3(f)(1); and second-degree possession of a handgun for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1).  The same jury, in a separate trial, also convicted defendant of second-degree possession of a weapon by a convicted person, N.J.S.A. 2C:39-7(b)(1).  Defendant was sentenced to an aggregate term of twenty years in prison with periods of parole ineligibility and supervision as prescribed by the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.

---

[1]  We use initials and pseudonyms to protect the victims' privacy interests.

A-1650-21

Defendant appeals from his convictions and sentence. Discerning no reversible error, we affirm.

## I.

Cathy, Randy, and defendant knew each other. Cathy had lived with defendant, and they had two children together. Cathy and Randy had one child together.

In the afternoon of May 4, 2018, Cathy had driven home in her Mazda with Randy. As she and Randy pulled into the parking lot of Cathy's apartment building, defendant arrived in a separate car. Defendant and Cathy exchanged some words. Cathy later testified that the interaction was "tens[e]," but that there was no "major argument." Several hours later, defendant came to Cathy's apartment, and he and Cathy had an argument. Defendant gathered some of his belongings and told Cathy that he would not be back until the next day.

At approximately 9:30 p.m. that same evening, Randy drove Cathy to pick up food for the children. Cathy testified that as she and Randy were driving in the Mazda, she noticed a black Nissan SUV tailgating the Mazda. Cathy then described a chaotic situation during which the Nissan pulled alongside the Mazda and she heard gunshots. The Mazda flipped over, rolled several times,

A-1650-21

and came to a stop upside down off the road.  Cathy was not seriously hurt, and she called 911 to report the incident.

The Nissan also went off the road and hit a pole.  Two neighbors witnessed the Mazda and Nissan drive by, heard three gunshots, and then heard crashing metal.  The neighbors went to investigate and found defendant lying outside the Nissan screaming about an injury to his leg.  They also saw another car in the bushes and saw Cathy standing nearby screaming about shots being fired at her.  One of the neighbors called 911.

Several police officers responded to the scene, including Officer David Giraldo.  Giraldo testified that when he arrived shortly after 10:00 p.m., he saw defendant lying on the grass two or three feet from a heavily damaged black Nissan.  A bystander pointed out that there was another car in the bushes.  Giraldo saw Cathy and Randy standing by the overturned Mazda, and Cathy told the officer that someone in the Nissan had fired shots at them.  Cathy then recognized defendant and told the officer that she had an argument with him before the shooting.

The police questioned defendant, but he denied having a gun.  The police later found a handgun under the passenger seat in the Nissan.  There were three hollow nose bullets in the barrel of the gun, and the gun was in a cocked, ready-

A-1650-21

to-fire position. Three spent shell casings were also recovered. The serial number on the gun had been scratched off.

Defendant, Cathy, and Randy were all taken to a hospital. Several hours after the incident, police interviewed Randy at the hospital. Randy told the police that he had been driving with Cathy when another car had pulled up behind and then alongside them. Randy then saw a gun through the passenger-side window of the other car and a muzzle flash. Randy stated he heard the first bullet "whiz" past him. Randy then accelerated the Mazda, and it crashed.

Following the incident, law enforcement personnel examined both the Nissan and the Mazda. The passenger-side mirror on the Nissan had been bent forward, and it had a hole consistent with a bullet passing through the mirror. The driver's side of the Mazda was also damaged. Law enforcement personnel also learned that the Nissan belonged to defendant's cousin.

Investigators found two bullet holes in the Mazda: one in the driver's door and one in the rear driver's side passenger door. They also recovered two bullets from the Mazda: one from the floor and the other from inside the rear passenger door.

Cathy and Randy both testified at trial. Randy testified that he could not recall most of the incident, and he explained he had suffered a head injury that

A-1650-21

affected his memory. He claimed that he had never met defendant and could only recall driving Cathy, seeing a flash of light, and then rolling over in the Mazda. Randy did remember that he had given a statement to the police while at the hospital following the incident, but he could not recall what he had said in that statement.

The trial court conducted a Gross[2] hearing to determine if the State could use Randy's statement. Detective Stephen Zeichner testified that he interviewed Randy at the hospital several hours after the crash. Zeichner stated that Randy had seemed fine, had no visible injuries, and never indicated that he did not wish to give a statement. After hearing Zeichner's testimony and listening to Randy's recorded statement, the trial court found that the statement was reliable and that it was inconsistent with Randy's trial testimony. The trial court, therefore, allowed the State to play Randy's recorded statement to the jury.

The State also called defendant's cousin to testify at trial. The cousin explained that on May 5, 2018, she noted her Nissan SUV was missing and defendant's car was in the space where she had left her car.

---

[2]  State v. Gross, 121 N.J. 1 (1990).

A-1650-21

Defendant elected to testify at trial. In a prior proceeding, the trial court had ruled that if defendant testified, the State could challenge his veracity by confronting him with his 2009 criminal convictions.

Defendant testified that he had an argument with Cathy on the evening of May 4, 2018. He explained that he decided to leave the apartment and spend the night with some relatives who lived in Carteret. Thereafter, he learned of an opportunity to work as a bouncer at a party in Newark that same night. He testified that he took his cousin's Nissan because he did not want to drive his Cadillac. He also stated that he retrieved a firearm from a storage unit to use for his safety. He admitted he did not have a permit for the firearm.

Defendant went on to testify that he parked outside Cathy's apartment building in the Nissan. As he was sitting there, he saw Cathy's Mazda drive out of the apartment complex and believed the Mazda had been stolen. Accordingly, defendant followed the Mazda and pulled out his gun, planning to shoot at the Mazda's tires. Defendant explained that when he tried to contact the Mazda, the Mazda rammed his car and his gun discharged accidentally. Defendant stated that the Mazda rammed him at least twice and he fired a shot at the Mazda's tires. Defendant also stated that the Mazda rammed him again, and he crashed.

7

Defendant told the jury that he was not trying to kill Cathy or Randy, and he denied being jealous of the relationship between Cathy and Randy.

After hearing all the testimony at the trial, the jury convicted defendant of two counts of first-degree attempted murder and related weapons offenses. Almost immediately after the end of the first trial, the same jury was presented with additional evidence and instructions in a new trial. Thereafter, the jury convicted defendant of second-degree possession of a weapon by a previously convicted person.

Approximately two months later, defendant was sentenced. On the two convictions for attempted murder, defendant was sentenced to concurrent terms of twenty years in prison, subject to NERA. On the convictions for unlawful possession of a weapon and certain persons not to have a weapon, defendant was sentenced to eight years in prison on each conviction, and both those sentences were run concurrent to his other sentences. All of defendant's other convictions were merged. Accordingly, in aggregate, defendant was sentenced to twenty years in prison, subject to NERA.

II.

Defendant now appeals from his convictions and sentence. He presents five arguments for our consideration, which he articulates as follows:

A-1650-21

POINT ONE: THE PROSECUTOR VIOLATED [DEFENDANT'S] RIGHT TO A FAIR TRIAL WHEN HE REPEATEDLY TOLD THE JURORS THAT [DEFENDANT] LIED TO THEM UNDER OATH IN HIS OPENING AND SUMMATION.

POINT TWO: THE TRIAL COURT'S ORDER ADMITTING . . . DEFENDANT'S 2009 CONVICTION[S] IMPROPERLY UNDERMINED [DEFENDANT'S] CREDIBILITY.

POINT THREE: THE TRIAL COURT'S ORDER ADMITTING THE PRIOR INCONSISTENT STATEMENT OF A STATE'S WITNESS WITHOUT SATISFYING THE REQUIREMENTS OF N.J.R.E. 803(A)(1) DEPRIVED [DEFENDANT] OF HIS RIGHT TO DUE PROCESS AND A FAIR TRIAL.

POINT FOUR: THE TRIAL COURT FAILED TO CHARGE THE JURY BEFORE [DEFENDANT'S] CERTAIN [PERSONS] TRIAL AND THEREFORE DEPRIVED HIM OF HIS RIGHT TO A FAIR TRIAL.

POINT FIVE: THE TRIAL COURT ABUSED ITS DISCRETION BY IMPOSING A MANIFESTLY EXCESSIVE SENTENCE.

A.    The Prosecutor's Comments.

Prosecutors in criminal cases are expected to make "vigorous and forceful" arguments to juries.  State v. Frost, 158 N.J. 76, 82 (1999); see also State v. Garcia, 245 N.J. 412, 435 (2021).  Nevertheless, a prosecutor's opening statement to the jury "'should provide an outline or roadmap of the State's case' and 'should be limited to a general recital of what the State expects, in good

faith, to prove by competent evidence.'" State v. Land, 435 N.J. Super. 249, 269 (App. Div. 2014) (emphasis omitted) (quoting State v. Walden, 370 N.J. Super. 549, 558 (App. Div. 2004)). Likewise, prosecutors are "obliged to confine summation remarks to the evidence in the case and only those reasonable inferences that may be drawn from that evidence." State v. McNeil-Thomas, 238 N.J. 256, 283 (2019) (LaVecchia, J., dissenting).

Accordingly, a prosecutor's comments concerning the credibility of witnesses must be supported by the record. See State v. Smith, 167 N.J. 158, 179-82 (2001). The prosecutor should not express his or her personal opinion on a witness's credibility, but "may attempt to persuade the jury that a witness is not credible and in doing so, 'may point out discrepancies in a witness's testimony or a witness's interests in presenting a particular version of events.'" State v. Supreme Life, 473 N.J. Super. 165, 174 (App. Div. 2022) (quoting State v. Johnson, 287 N.J. Super. 247, 267 (App. Div. 1996)).

When a defendant testifies, a prosecutor may comment on inconsistencies in the defendant's trial testimony or prior statements, provided that the prosecutor does not attempt to characterize the entirety of the defendant's testimony as false. See id. at 175. In that regard, we have explained:

> [W]hile the prosecutor was entitled to draw the jury's attention to [the] defendant's false statements . . . when

assessing the credibility of [the] defendant's trial testimony, he was not permitted to tip the scale in the State's favor by repeatedly telling jurors that [the] defendant's trial testimony was not worthy of belief because [the] defendant lied before, was lying again and was, simply put, therefore a liar.

[Ibid.]

In short, a prosecutor should not call a defendant a "liar." See State v. Wakefield, 190 N.J. 397, 466 (2007); Supreme Life, 473 N.J. Super. at 174.

Defendant argues that his right to a fair trial was violated when the prosecutors repeatedly told the jury that defendant was a liar.[3] Defendant points to comments in the State's opening and closing statements to the jury. In the State's opening statement, the prosecutor made the following two comments:

1.      "One of the officers asks [defendant] immediately [if there is] anything in the car that [the officer] needs to know about. The defendant says no, help me with my leg. He lies."

2.      "Again, the officer asks[,] anything in the car that I need to know about[?] The defendant says there's nothing in the car. He lied."

During the closing arguments, the prosecutor made the following eight additional statements to the jury:

---

[3] Two assistant prosecutors represented the State at trial. One gave the opening and the other the closing.

11

3. "The defendant lied to you multiple times in his testimony under oath. Multiple times."

4. "That gun is an illegal gun for multiple reasons. It is clearly defaced. Another lie to you: 'Oh, I don't know what defaced means.'"

5. "The bizarre nature of the defendant's version is so inconsistent with objective evidence in this case that you know he lied to you under oath."

6. "How do you know he lied to you under oath? What was the word he used . . . . Something like . . . he was jolted or something . . . . Oh, maybe this is an accidental shooting."

7. "During his testimony, he lied to you multiple times."

8. "He lied to [an officer] at the scene."

9. "That source of testimony that comes from the defendant and a lot of the testimony that he gave to you is a source that you should be reticent [sic] to believe because it's (a) inconsistent with the facts, it's inconsistent with human beings. He's motivated to lie or mislead you. He's charged with very serious offenses."

10. "He testified that they were like six inches apart of [inaudible] connected or you are nowhere near tires. That's a lie."

A-1650-21

All those statements by the prosecution were improper.  Nevertheless, defense counsel did not object to any of those statements at trial.  Accordingly, we review the statements for plain error.  See R. 2:10-2; State v. Singh, 245 N.J. 1, 13 (2021) (explaining that "[w]hen a defendant does not object to an alleged error at trial, such error is reviewed under the plain error standard").  "[A]n unchallenged error constitutes plain error if it was 'clearly capable of producing an unjust result,'" Singh, 245 N.J. at 13 (quoting R. 2:10-2), and "raise[s] 'a reasonable doubt . . . as to whether the error led the jury to a result it otherwise might not have reached,'" State v. Funderburg, 225 N.J. 66, 79 (2016) (omission in original) (quoting State v. Jenkins, 178 N.J. 347, 361 (2004)).  When applying the plain error standard, courts must evaluate the error "in light of the overall strength of the State's case."  State v. Sanchez-Medina, 231 N.J. 452, 468 (2018) (quoting State v. Galicia, 210 N.J. 364, 388 (2012)).

Here, we discern no plain error.  The State's evidence against defendant was very strong.  Defendant did not deny that he was driving the Nissan.  He also admitted that he had a weapon with him and that at least two bullets were discharged towards the Mazda.  Defendant's contention was that he initially discharged the gun accidentally.  There was strong circumstantial evidence that the gun did not discharge accidentally.  In that regard, the jury heard Randy's

13

statement that a bullet "whizzed" by him. The State also found two bullet holes in the Mazda and recovered two bullets from the Mazda, one from the floor and the second from the rear passenger door. That evidence does not suggest an accidental firing and is inconsistent with defendant's contentions that he only fired one bullet intentionally and aimed for the tire, and that any other bullets discharged were done so accidentally. The jury also heard Cathy's testimony that she and defendant had some kind of exchange earlier in the evening, that bullets had been fired at her while she was in her Mazda, and that just after the accident, she saw defendant at the scene of the crash.

Defendant correctly points out that his credibility was a critical issue at trial. He also correctly points out that it was improper for the prosecutors to call him a liar ten times. Nevertheless, when evaluated in full context, the prosecutors' comments were not clearly capable of producing an unjust result nor do they raise a reasonable doubt as to whether those comments led the jury to a result it otherwise might not have reached. Because the evidence against defendant was substantial and came from various witnesses, we discern no plain error in the prosecutors' improper comments.

A-1650-21

B.   The Admission of Defendant's 2009 Convictions.

N.J.R.E. 609 governs the admissibility of a prior conviction for the purpose of impeaching a witness. If more than ten years "have passed since the conviction or the witness's release from confinement for that conviction, whichever is later, the conviction 'is admissible only if the court determines that its probative value outweighs its prejudicial effect.'" State v. Higgs, 253 N.J. 333, 368 (2023) (quoting N.J.R.E. 609(b)(1)). The party seeking to introduce the conviction must show that the probative value outweighs its prejudicial effect. Ibid. In making the admissibility determination, the trial court can consider (1) "whether there are intervening convictions for crimes or offenses, and if so, the number, nature, and seriousness of those crimes or offenses," (2) "whether the conviction involved a crime of dishonesty, lack of veracity or fraud," (3) "how remote the conviction is in time," and (4) "the seriousness of the crime." State v. R.J.M., 453 N.J. Super. 261, 269 (App. Div. 2018) (quoting N.J.R.E. 609(b)(2)).

"The key to exclusion is remoteness," which "cannot ordinarily be determined by the passage of time alone." State v. Murphy, 412 N.J. Super. 553, 564 (App. Div. 2010) (quoting State v. Sands, 76 N.J. 127, 144 (1978)). An

appellate court reviews a trial court's admission of a defendant's prior conviction for an abuse of discretion.  Higgs, 253 N.J. at 367.

Before trial, the trial court conducted a hearing on which convictions, if any, would be admitted if defendant testified.  The State sought to introduce four prior convictions:  a 2001 conviction for third-degree possession of drugs on or near school property; a 2003 conviction for third-degree possession of drugs with intent to distribute; and two 2009 convictions for third-degree terroristic threats and third-degree receiving stolen property.  The trial court correctly recognized that all those convictions were beyond the ten-year period and, therefore, the court balanced probative value versus prejudicial effect.  The court excluded the 2001 and 2003 convictions.

In contrast, the court allowed the 2009 convictions because they were just beyond the ten-year period.  Just as importantly, the court considered the nature of the crimes and found that they went to defendant's veracity.  The court then appropriately sanitized what the jury would hear concerning the 2009 convictions.  We discern no abuse of discretion in that decision.

Defendant also argues that the court did not give a limiting instruction immediately after the jury heard about defendant's 2009 convictions.  That is accurate.  The trial court did, however, give a limiting instruction as part of the

final jury charge. The court explained that defendant's prior convictions "may only be used in determining the credibility or believability of [his] testimony," and that the jury "may not conclude that the defendant committed the crime charged in this case or is more likely to have committed the crime charged simply because he committed a crime on another occasion." Consequently, we discern no reversible error concerning when the trial court provided that correct limiting instruction.

C.    The Admission of Randy's Prior Statement.

The State called Randy to testify at trial. After Randy stated that he could not remember most of the incident, the State moved to admit the statement he had given to the police shortly after the incident. After conducting a <u>Gross</u> hearing outside the presence of the jury, the trial court found that Randy's testimony was inconsistent with his prior statement and the prior statement was reliable. Accordingly, the trial court permitted the State to introduce and play for the jury Randy's prior recorded statement. Defendant now argues that the admission of Randy's prior statement was reversible error because it deprived him of a fair trial. We disagree.

N.J.R.E. 803(a) provides that a witness's prior inconsistent statement may be admitted as substantive evidence under certain circumstances. When the

17

prior statement is inconsistent with the witness's testimony at trial and the party that called the witness seeks to introduce the statement, the statement is admissible if it is "contained in a sound recording or in a writing made or signed by the declarant-witness in circumstances establishing its reliability," or was given under oath in a proceeding or deposition.  N.J.R.E. 803(a)(1).

Reliability is determined by considering several factors relating to how and to whom the statement was made.  See Gross, 121 N.J. at 10; State v. Brown, 138 N.J. 481, 539 (1994).  The statement must be proven reliable "by a fair preponderance of the evidence" when considering "all surrounding circumstances" under which the statement was made.  State v. Spruell, 121 N.J. 32, 41-42 (1990).

The trial court conducted a hearing outside the presence of the jury and heard testimony from Zeichner, who took the statement from Randy.  The trial court also listened to Randy's recorded statement.  Based on that evidence, the trial court found that Randy's prior statement was reliable.  The trial court also found that the substance of Randy's prior statement was inconsistent with his testimony at trial.  We discern no abuse of discretion in that decision.  See Summit Plaza Assocs. v. Kolta, 462 N.J. Super. 401, 409 (App. Div. 2020) (explaining that "a trial court is afforded considerable latitude regarding the

18

admission of evidence, and is to be reversed only if the court abused its discretion" (quoting Alves v. Rosenberg, 400 N.J. Super. 553, 562 (App. Div. 2008))).

D.    The Trial Court's Charge to the Jury at the Certain Persons Trial.

When a defendant is charged with a weapons offense and the offense of certain persons not to have a weapon, the certain persons offense "must be tried separately since proof that [the] defendant was a convicted felon (required in the trial of the latter charge) clearly tends to prejudice the jury in considering the former." State v. Ragland, 105 N.J. 189, 193 (1986). To protect the defendant's right to a jury trial, the jury in the second trial must be instructed that (1) the State needs to prove each element of a certain persons offense beyond a reasonable doubt; (2) the jury must consider all the evidence at the second trial as new evidence; and (3) the jury must disregard its prior verdict. Id. at 194-95.

"Appropriate and proper jury instructions are essential for a fair trial." State v. A.L.A., 251 N.J. 580, 591 (2022). A jury charge must "correctly state the applicable law, outline the jury's function and be clear in how the jury should apply the legal principles charged to the facts of the case at hand." Ibid. (quoting Est. of Kotsovska v. Liebman, 221 N.J. 568, 591 (2015)).

The model criminal jury charge for a certain persons offense directs the jury to "disregard completely [its] prior verdict" and instructs that defendant is entitled to the presumption of innocence and the State must again prove every element of the crime beyond a reasonable doubt. Model Jury Charges (Criminal), "Certain Persons Not to Have Any Firearms (N.J.S.A. 2C:39-7(b)(1))" (rev. Nov. 13, 2023). The model jury charge states that the charge should be given "before the beginning of the second trial if it is tried before the same jury that decided the possessory charge of a weapon or firearm." Ibid. Accordingly, the focus is whether the jury was sufficiently instructed to disregard its prior verdict and consider the evidence anew. See Ragland, 105 N.J. at 195-96; State v. Hooks, 350 N.J. Super. 59, 71 (App. Div. 2002).

The court here did not instruct the jury at the beginning of the separate trial on the certain persons offense. Defense counsel, however, did not object or request an instruction at the beginning of the second trial and, therefore, we review this issue for plain error. See Singh, 245 N.J. at 13.

The trial court did give the jury clear instructions at the end of the second trial, which took only one day. In that regard, the trial court instructed the jury:

> You must now disregard completely your prior verdict that you just returned on the seven counts presented to you and consider anew the evidence previously admitted on the possession of a weapon.

The defendant is entitled to a presumption of innocence. Each and every material fact that makes up the crime including the element of possession must be proven by the State beyond a reasonable doubt.

That instruction correctly explained the jury's role, and we discern no reversible error even though the jury was not given the instruction at the beginning of the second trial. Given the short duration of the second trial, our review of the record satisfies us that the jury was properly instructed that it must disregard the prior verdict, consider the evidence of possession anew, and determine that the State had proved each element of the certain persons charge beyond a reasonable doubt.

E.    Defendant's Sentence.

Finally, defendant argues that his sentence was excessive. The record does not support that argument.

An appellate court's standard of review of a sentence is well-established and deferential. State v. Cuff, 239 N.J. 321, 347 (2019); State v. Fuentes, 217 N.J. 57, 70 (2014). We will affirm a trial court's sentence unless: "(1) the sentencing guidelines were violated; (2) the findings of aggravating and mitigating factors were not 'based upon competent credible evidence in the record;' or (3) 'the application of the guidelines to the facts' of the case 'shock[s] the judicial conscience.'" State v. Bolvito, 217 N.J. 221, 228 (2014) (alteration

in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).  The balancing process to determine a sentence "is more than counting whether one set of factors outnumbers the other . . . the court must qualitatively assess the relevant aggravating and mitigating factors, assigning each factor its appropriate weight."  State v. Case, 220 N.J. 49, 65 (2014) (citing Fuentes, 217 N.J. at 72-73).

Defendant was convicted of two counts of first-degree attempted murder.  The sentencing range for those first-degree convictions is between ten and twenty years.  N.J.S.A. 2C:43-6(a)(1).  The court also needed to consider whether to run those sentences consecutively or concurrently.  See State v. Torres, 246 N.J. 246, 267-70 (2021); State v. Yarbough, 100 N.J. 627, 643-44 (1985).  The court found aggravating factors three (the risk of re-offense), N.J.S.A. 2C:44-1(a)(3); six (defendant's prior criminal record), N.J.S.A. 2C:44-1(a)(6); and nine (the need for deterrence), N.J.S.A. 2C:44-1(a)(9).  The court also considered but found no mitigating factors.  After evaluating the relevant considerations under Yarbough, the court determined to run the two sentences concurrently.  The court also determined to run the sentences for defendant's weapons convictions concurrently or to merge those convictions. So, after being convicted of seven different crimes, including two first-degree crimes and two

second-degree crimes that were not merged, defendant was sentenced to an aggregate prison term of twenty years, subject to NERA. We discern nothing excessive in that sentence and no abuse of discretion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1650-21